IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

KEVIN BRYANT BROGDEN,
        Plaintiff,

v.                                                                            Civil Action No. 1:10cv173

TODD ALLEN SMITH, individually, and
THE LAW OFFICES OF TODD ALLEN SMITH,
        Defendants.

## REPORT AND RECOMMENDATION/OPINION

This matter is before the undersigned United States Magistrate Judge pursuant to Defendants' "Amended Motion to Dismiss Complaint Made under Special Appearance" [Docket Entry 20] filed on January 27, 2011. The Court provided notice to Plaintiff, *pro se* pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) on February 16, 2011. Plaintiff filed his "Motion to Deny Motion to Dismiss and Response as to Roseboro Notice" on February 28, 2011 [Docket Entry 24].

Plaintiff filed his Complaint in this Court against Todd Allen Smith and The Law Offices of Todd A. Smith[1] ("Defendant") on October 12, 2010 [Docket Entry 1]. The case was referred to the undersigned United States Magistrate Judge by the Honorable Irene M. Keeley, United States District Judge for the Northern District of West Virginia by Order entered November 5, 2010 [Docket Entry 5]. On December 20, 2010, Defendant filed a "Special Appearance and Motion to Dismiss Complaint," arguing, among others, that he had not been properly served; that this Court lacks subject matter jurisdiction; that this Court lacks personal jurisdiction; and that the Northern District of West Virginia is not the proper venue for this action. On or about January 24, 2011,

---

[1] Mr. Smith represents that he practices law under his own name as a sole proprietor and that there is no separate entity known as "The Law Offices of Todd Allen Smith." The Court will therefore refer to both Defendants simply as "Defendant."

Plaintiff served Defendant through certified mail. Defendant's Amended Motion to Dismiss was filed on January 27, 2011. Because the plaintiff is proceeding *pro se*, the Court advised him of his right to file a response, and to alert him to the fact that his failure to respond could result in the entry of an order of dismissal against him. Davis v. Zahradrich, 600 F.2d 458, 460 (4th Cir. 1979); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Plaintiff filed his "Motion to Deny Motion to Dismiss and Response as to Roseboro Notice" on February 28, 2011 [Docket Entry 24].

**FACTS**

On November 26, 2007, a federal grand jury for the Middle District of North Carolina returned a nine-count Indictment against Plaintiff for violations of 18 USC section 1956 (money laundering) and 18 USC section 5354 (structuring). Plaintiff retained attorney Smith (Defendant) by verbal agreement to represent him, paying him $10,000.00.

On March 5, 2008, Plaintiff traveled to Defendant's law office in Graham North Carolina. He was accompanied by his brother Vander Brogden, during that entire meeting. He was also accompanied by a witness at every meeting with Defendant. On March 5, 2008, Defendant presented Plaintiff with a plea offer for four counts of violating 18 USC 1956 in consideration for a sentence of 57 months in prison, which Plaintiff signed.

According to the Complaint, Plaintiff then commented on the plea deal, initiating an exchange with Defendant as follows:

Brogden: "This sure is a lot of time for all I've done."

Smith: "Well, you should have accepted your earlier plea offer."

Brogden: "What earlier plea offer?"

Smith: "When they offered you 36 months before they started looking into how many

2

vehicles you sold."

Brogden: "You never offered me an earlier plea."

Smith: "Oh, yes, we discussed it awhile back."

Brogden: "No, we had not. That's the first I've heard of it."

Plaintiff's brother allegedly witnessed this entire exchange. Further, Plaintiff "commented on the surprising exchange with his father . . . as soon as he saw him several hours later."

Notwithstanding the above, Plaintiff entered the plea he had signed on March 5, 2008, in person in federal court on March 6, 2008, the next day. According to the transcript of the plea hearing, Plaintiff never mentioned a possible earlier, more advantageous plea in Court, and affirmed under oath to the court that he was fully satisfied with the services rendered on his behalf by his attorney. See United States v. Kevin Brogden, Case No. 1:07-cr-411 (Transcript of Plea Hearing March 6, 2008.).[2] The Court takes judicial notice of the public documents and transcripts from the criminal case.

Prior to sentencing, Defendant withdrew from representing Plaintiff and Plaintiff retained

---

[2] Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006)(unpublished).

There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, documents central to Plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed. Id.; Gasner v. Dinwiddie, 162 F.R.D. 280 (E.D.Va. 1995)(also cited with approval in Witthohn, supra.)(permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint.) These documents were not disputed in Plaintiff's prior case.

a different attorney at additional expense of $25,000.00.

Plaintiff was sentenced on February 10, 2009. The transcript of that hearing indicates Plaintiff's new counsel submitted a sentencing brief, attaching 59 character letters "from people who have known this very good man in various capacities in the Burlington community." Twenty-two people appeared in Court in support of Plaintiff, including his wife, son, mother, father, brother, mother-in-law, sister-in-law, brothers-in-law, cousin, Plaintiff's employer, Plaintiff's high school teacher and close friend, the county sheriff, a retired deputy sheriff, and several businesspeople from the local community. (See 1:07cr411 (M.D.N.C.) (Docket Entry 43)). Counsel advised the Court: "I say this, Your Honor, to point out the fact that this man has community support like I've never seen in 42 years of doing this - - this work . . . ." (Id. at p. 8.) Numerous witnesses testified as to Plaintiff's good character and how the community would lose a great deal when he was sentenced. Plaintiff's lawyer at the sentencing hearing requested the Court consider a sentence of "probation and let him go back to Burlington." Id. at 28. Counsel represented that Plaintiff could continue to work for his employer, and continue to be a family man and take care of his family. He stated:

> But when it occurred to him that you could give him a prison sentence that would keep him from being at his son Bryant's graduation coming up in a couple of months, he broke down and cried like a baby. Bryant has been the light of his life. Bryant has been the light of his life. Bryant is, among other things, a championship clogger. He has got hundreds of trophies for his clogging expertise. He has been in Mexico. He's been all over the United States on the clogging team. And I say to the Court this man is more concerned about his family and what it's going to do to them for him to be gone than for himself.

At the conclusion of the sentencing hearing, United States Chief District Judge James Beaty, Jr., stated:

4

> The Court takes into account as well the history and characteristics of the Defendant. Without question the Defendant has broad community support. The Defendant, up to the time that he was suspected of being engaged in these activities, beginning as early as 2002, which may have been known within the community by law enforcement, if not in the community at large, the Defendant has maintained a good character in the community; but there is no question that he was supportive of various community activities and offered very generously of his resources to those in need.

The Court sentenced Plaintiff to 57 months imprisonment, significantly recommending to the Bureau of Prisons that he be designated to a Bureau of Prisons facility as close as possible to his place of residence.

## Discussion
## Contentions

Defendant argues three defenses to Plaintiff's lawsuit: 1) This Court lacks subject matter jurisdiction as there is not complete diversity of citizenship; 2) This Court lacks personal jurisdiction over Defendant; and 3) This District is not the proper venue for this case. Plaintiff argues: 1) There is complete diversity of citizenship; 2) The Court has personal jurisdiction over Defendant; and 3) This Court is the proper venue, and if it was not, the proper procedure would be to transfer the case, not to dismiss it.

## Subject Matter Jurisdiction

Plaintiff is incarcerated in Federal Correctional Institution Morgantown, West Virginia. In his Complaint, Plaintiff alleges solely diversity jurisdiction under 28 USC section 1332. He alleges he resides in West Virginia while Plaintiff resides in North Carolina. Further, he alleges the value of his claims (seeking damages of $7,507,500.00) exceeds the threshold for federal jurisdiction.

Defendant concedes that his residence is in North Carolina. He argues, however, that Plaintiff is also a resident of North Carolina and that there is therefore not complete diversity of

5

citizenship. Defendant argues that Plaintiff has lived his entire life in North Carolina until his present incarceration in West Virginia. His entire family continues to reside in North Carolina. He has no contacts with the state of West Virginia aside from his incarceration here. He has shown no intention of permanently residing in the State of West Virginia.

Defendant argues that several Circuit Courts of Appeal hold that the domicile of a person incarcerated in the Bureau of Prison is the State where he was living prior to incarceration, citing Sullivan v. Freeman, 944 F.2d 334 (7th Cir. 1991) and Hall v. Curran, 599F.3d 70 (1st Cir. 2010).

In response, Plaintiff argues as follows:

> I have severed most of my ties to North Carolina. I have sold my homes and businesses. I am formally separated from my wife and we have agreed to divorce. My only child is now an adult, has left home and travels widely. Finally, I have begun the process of transferring both my driver's license and voter registration (presuming those rights will be restored) to West Virginia. As of now, not only am I domiciled and physically residing in West Virginia, I intend to reside here in the future after release from probation. From my date of release until the end of probation, I will also not reside in North Carolina. My release address at present is in Florida, which also would grant diversity jurisdiction upon this Court.

(Plaintiff's Response to Motion for Summary Judgment). Plaintiff correctly notes that Defendant has not cited any Fourth Circuit law in support of his position. In fact, there is a dearth of Fourth Circuit law on this issue. Plaintiff, like Defendant, therefore cites outside circuits in support of his argument, including Housand v. Heiman, 594 F.2d 923 (2nd Cir. 1979), and Stifel v. Hopkins, 477 F.2d 1116 (6th Cir. 1973).

In an unpublished opinion, Roberts v. Morchower, 956 F.2d 1163 (4th Cir. 1992), the Fourth Circuit held:

> For diversity jurisdiction purposes, a prisoner's domicile is presumed to be where he was domiciled prior to incarceration. *Polakoff v. Henderson*, 370 F.Supp. 690 (N.D.Ga. 1973), *aff'd,* 488 F.2d 977 (5th Cir. 1974). Although this presumption may be rebutted by an inmate's intention to change domicile, *see Jones v. Hadican,* 552

6

F.2d 249 (8th Cir.), *cert. denied*, 431 U.S. 941 (1977), Roberts has not pled such an intent on the face of his complaint. The district court properly dismissed the complaint for lack of jurisdiction under 28 U.S.C. section 1332 (1988) and we affirm.

In a recent case, another Court within the Northern District of West Virginia held:

> District courts also have original jurisdiction in all civil actions when a matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. section 1332. The plaintiff wishing to bring suit in federal court has the burden of proving complete diversity and the requisite amount in controversy. *See* Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When considering diversity for jurisdictional purposes, a prisoner's domicile is presumed to be where he was domiciled prior to incarceration. Where the inmate demonstrates an intention to change domicile, the presumption is rebuttable. *See* Jones v. Hadican, 552 F.2d 249 (8th Cir. 1977).

Schuch v. Cipriani, 2006 WL 1651023 (N.D.W.Va. 2006).

To rebut the presumption that he retains the preincarceration domicile, a prisoner must "show truly exceptional circumstances" and "introduce more than unsubstantiated declarations." Jones v. Hadican, 552 F.2d 249 (8th Cir. 1977)(cited in Schuch, above)(quoting Stifel v. Hopkins, 477 F.2d 1116 (6th Cir. 1973)). At the pleading stage, the prisoner "must allege facts sufficient to raise a substantial question about the prisoner's intention to acquire a new domicile." Id.; accord Roberts v. Morchower, 1992 WL 42885 at *1 (4th Cir. Mar. 4, 1992). Significantly, the prisoner must not only show he is no longer a citizen of the state in which he resided prior to incarceration, but he must show intent to make the State in which he is now physically present his home.

From the records of Plaintiff's criminal case, it is clear that at the time he was incarcerated he was a citizen of North Carolina. As a citizen of North Carolina, Plaintiff could not initiate a lawsuit on the basis of diversity jurisdiction against the defendant because he is also a citizen of North Carolina and they were therefore not "citizens of different states" as required under 28 U.S.C. section 1332(a)(1). The presumption is that Defendant remains a citizen of North Carolina. To rebut

7

that presumption, he must "show truly exceptional circumstances" and "introduce more than unsubstantiated declarations." Jones v. Hadican, supra. A prisoner is "highly unlikely" to have state of mind necessary for domicile in state of imprisonment. Restatement (Second) Conflict of Laws 2d section 17 cmt. b. (1988 rev.).

Relevant factors for this Court to consider include "the prisoner's declaration of intentions, the possibility of parole . . ., the manner in which [he] has ordered his personal and business affairs, and any other factors that are relevant to corroboration of [the prisoner's] statements." Stifel v. Hopkins, 477 F.2d 1116 (6th Cir. 1973). "No single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." Garcia Perez v. Santaella, 364 F.3d 348 (1st Cir. 2004). The Courts favor ties that "could not easily be undone" over more easily established ties. Id.

In an attempt to rebut the presumption, Plaintiff claims he has severed "most" of his ties to North Carolina; sold his homes and businesses; is formally separated from his wife and agreed to divorce; his only child is now an adult, has left home and travels widely; and he had begun the process of transferring both his driver's license and voter registration (presuming those rights will be restored) to West Virginia. He states he intends to reside here in the future after release from probation, but also noted his release address at present is in Florida.

These claims are nearly identical to those rejected in Goad v. Gray, an Eastern District of Virginia case, 2010 WL 4735816 (E.D.Va. 2010), in which the Court held:

> Plaintiff has not pled any facts sufficient to plausibly suggest that he has changed his domicile to Pennsylvania from Virginia. Instead, he alleges only that he "is estranged from his wife, son and brother, and has severed all contact with Virginia both personal and otherwise," and that he "intends to reside in Pennsylvania upon his release." These are not the sort of exceptional circumstances that establish that a prisoner has acquired a new domicile.

> Plaintiff has not carried and cannot carry his burden of establishing jurisdiction in Federal Court over his claims based upon diversity of citizenship. There being no jurisdiction in Federal Court, Plaintiff's Complaint must be dismissed.

The Court cannot help but note the substantial community and family support Plaintiff had at his sentencing hearing, with 22 individuals present and 59 letters indicating support for Plaintiff being allowed to remain free and in the community. A number of individuals testified or wrote that Plaintiff's imprisonment (in any location, even in North Carolina) would be a significant loss to the community. Plaintiff's counsel in that proceeding requested that if Plaintiff were to be incarcerated it be as close as possible to the community where he resided in Burlington, North Carolina. In his Judgment and Commitment Order Chief Judge Beaty made the following recommendation to the Bureau of Prisons: "that the defendant be housed in a Bureau of Prisons facility as close as possible to his place of residence." Id. at Docket Entry 29.

Plaintiff's reporting date was June 15, 2009. As of January 4, 2010, seven months after he reported to the BOP, and only nine months before he filed his Complaint in this court, Plaintiff filed a motion for IFP for a 2255 motion, stating under oath he was married, that is wife earned $1800.00 per month, and that he actually supported his son. Id. at Docket Entry 37.[3] This supports a finding that, as of only nine months before filing the Complaint, Plaintiff still claimed North Carolina as his domicile and intended to return to North Carolina, even after having been incarcerated in West

---

[3]The Court notes that in Plaintiff's Motion for IFP to appeal the District Court's decision regarding his section 2255 motion, Plaintiff does state under oath that he is separated from his spouse with a divorce proceeding pending. He claims no income from his spouse. This motion was filed on February 28, 2011, the same date as his Response in this matter, and long after the Complaint in this case was filed, however. Plaintiff paid the $350.00 filing fee for this case, without moving for IFP.

9

Virginia for seven months.

Domicile is determined at the time the suit is filed. Plaintiff is only in West Virginia due to his assignment here by the Bureau of Prisons, and at the time of the Complaint, had been incarcerated in this State for only 16 months. He does state an intent to remain here, one of the factors to be considered. He does not, however, assert that he had ever been in this State before being incarcerated here, even for visits or vacations. He does not assert he has any friends or family or property in this State. The analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature. Here Plaintiff cites no contacts whatsoever with West Virginia, much less substantive ties that "could not easily be undone." Garcia Perez, supra.

Significantly, when Defendant first raised the issue of citizenship, in his first Motion to Dismiss, Plaintiff responded on January 3, 2011, only as follows:

> Title 13 USC section 141 requires the US Census Bureau to conduct a decennial accounting of all US citizens by state of residency, which was completed in the last year. Therein, Mr. Brogden was **required** to report his state of residence as West Virginia where he is incarcerated. The Department of Justice's Bureau of Prisons **ordered** its inmates to record their state of residence as the location where they are incarcerated, <u>not where they lived prior to incarceration or intended to live after incarceration</u>. It would be the epitome of arbitrary and capricious for one division of the US government to hold Mr. Brogden is a resident of West Virginia and for another to simultaneously conclude he is a resident of North Carolina. Mr. Brogden has also been a physical resident of West Virginia for more than 12 months prior to filing suit.

(Plaintiff's Objections to Motion to Dismiss) [Docket Entry 14] (bold print emphasis in original, underlining emphasis by the Court). Plaintiff did not state in his argument regarding domicile only a month earlier that he had severed ties with North Carolina, sold his homes and businesses, was divorcing his wife, that his child had left home, or that he was in the process of transferring his

10

driver's license and voter registration to West Virginia. In fact, his statement that he was **required** and **ordered** to record his residence as West Virginia, instead of where he resided prior to incarceration or where he intended to live after incarceration does not support his claim that he intends to reside in West Virginia, and instead supports a claim he intended to live either in North Carolina or another state.

Plaintiff may indeed intend not to return to North Carolina, despite his numerous contacts there. He has failed, however, to present any evidence that establishes his citizenship in West Virginia. In fact, he acknowledges that even his release address is in Florida.

Based on all of the above, the undersigned United States Magistrate Judge finds Plaintiff has not shown "truly exceptional circumstances" to rebut the presumption that his domicile is in North Carolina. Jones v. Hadican, supra. The undersigned therefore finds complete diversity of citizenship does not exist, and this Court therefore does not have subject matter jurisdiction over this case.

Further, because there is no subject matter jurisdiction, the undersigned cannot and does not reach the merits of Defendant's remaining arguments.

## RECOMMENDATION

For the reasons above stated, the undersigned United States Magistrate Judge respectfully recommends:

1. "Todd Allen Smith and The Law Offices of Todd Allen Smith's Amended Motion to Dismiss Complaint Made Under Special Appearance" [Docket Entry 20] be **GRANTED;**

2. "Motion to Deny Defendant's Motion to Dismiss and Response as to Roseboro Notice" [Docket Entry 24] be **DENIED**;

11

3. Todd Allen Smith and The Law Offices of Todd A. Smith's "Special Appearance and Motion to Dismiss Complaint" [Docket Entry 9] be **DENIED AS MOOT**; and

4. This matter be **DISMISSED and STRICKEN** from the Court's docket.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record by electronic means.

DATED: March 18 , 2011

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE